UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 15CR 10390 |
| v. | 18 U.S.C. § 1343 (Wire Fraud) |
| | 18 U.S.C. § 1623 (Perjury) |
| JAYME GORDON, | |
| Defendant | |

SEALED

**INDICTMENT**

The Grand Jury charges:

***OVERVIEW***

1.     At all times relevant to this indictment, the defendant, JAYME GORDON, lived in Randolph, Massachusetts.  GORDON was an amateur cartoonist who had submitted cartoon drawings and ideas for animated stories to many production studios and literary agencies.

2.     At all times relevant to this indictment, DreamWorks Animation SKG, Inc. ("DreamWorks") was a corporation headquartered in California that developed and produced animated movies.

3.     One of DreamWorks' hit movies was *Kung Fu Panda*, which was released in June 2008. *Kung Fu Panda* is the story of a comical giant panda named "Po," voiced by Jack Black, who is trained to be a Kung Fu master by an older, wiser red panda named "Master Shifu," voiced by Dustin Hoffman.  With the help of a group of animal friends called "The Furious Five," Po uses Kung Fu to defeat an evil enemy leopard and save The Valley of Peace.

4.     In 2011, GORDON filed a civil lawsuit against DreamWorks, alleging that the company had committed copyright infringement by basing the characters and story of *Kung Fu*

*Panda* on drawings and story ideas that he had submitted to DreamWorks and other production companies in the 1990s or that he had posted on his website.

5.      GORDON filed the lawsuit as part of a fraud scheme designed to obtain a multi-million-dollar settlement from DreamWorks.  To further his fraud scheme and persuade DreamWorks to agree to such a settlement, GORDON fabricated and backdated drawings of characters similar to those in *Kung Fu Panda*, lied repeatedly during his deposition, and destroyed relevant evidence that he was required to produce in civil discovery.

6.      GORDON's scheme failed, and he ultimately had to dismiss his civil suit, when DreamWorks discovered that some of what GORDON claimed were his original panda drawings from the early 1990s were, in fact, traced from a Disney coloring book published in 1996.  But by this time, approximately $3 million in legal fees had already been spent to defend Dream Works from GORDON's fraudulent suit.

### THE FRAUD SCHEME

### GORDON's 1990-1998 Copyright Registrations and Studio Submissions

7.      From 1990 through 1993, GORDON submitted more than 300 pages of material for registration with the U.S. Copyright Office in five separate deposits.  This material, which consisted primarily of cartoon character drawings and story ideas, contained only one drawing of a panda – a drawing of a character GORDON called "Penelopi Panda," which bears no resemblance to Po, the giant panda in the *Kung Fu Panda* movie.





8.     From at least 1989 through 2000, GORDON also sent proposals to Walt Disney Pictures, DreamWorks, and other production and publishing companies, asking if the companies wanted to collaborate with him on projects based on his characters. While GORDON kept copies of some of the cover letters he sent, he claimed that he did not keep copies of the work that he attached to those letters. The cover letters mention several of GORDON's stories, but none mention either pandas or Kung Fu.

9.     In keeping with their standard practice, Disney, DreamWorks, and the other production companies sent GORDON letters rejecting his proposals. Rejecting unsolicited submissions is standard practice for production companies, in part because they hire teams of skilled creative talent to develop their characters, stories, and projects themselves, and in part because they hope to prevent lawsuits like the one GORDON filed.

**1999-2000 Panda Power Registrations**

10.     In 1999 and 2000, GORDON registered with the U.S. Copyright Office hundreds of additional pages of material, including a series of drawings and stories that he called "Jamie GORDON's Panda Power." These stories center around a giant panda named "Kid" and a small red panda named "Red," both of whom receive super powers from magical medallions that they wear around their necks.



11.     While "Panda Power" centers around pandas, beyond that, GORDON's story and

characters have very little in common with the story and characters in DreamWorks' subsequent *Kung Fu Panda* movie:

- GORDON's pandas receive super powers from the medallions they wear on their chests; DreamWorks' pandas have no super powers and instead rely on the skilled use of Kung Fu.

- GORDON described his giant panda, Kid, as serious and mature, noting that Kid played the role of big brother to Red, who GORDON described as immature, often needing to be saved by Kid. In *Kung Fu Panda*, Po, the giant panda, is a goofy, comical figure, while Master Shifu, the red panda, is an older, wiser Kung Fu master – there is no sibling or buddy-type relationship.

- GORDON's Panda Power story makes no mention of Kung Fu or of the pandas being supported by a group of fighting animals like The Furious Five characters in the *Kung Fu Panda* movie (a crane, snake, mantis, tiger, and monkey).

### *Kung Fu Panda* and GORDON's 2008 Registration

12. In early 2008, several months before the movie's June 2008 release, GORDON saw a trailer for *Kung Fu Panda*.

13. After seeing that trailer, GORDON revised his "Panda Power" drawings and story, which he renamed "Kung Fu Panda Power." He made these revisions as part of his fraud scheme, so that his work would appear to be more similar to the DreamWorks pandas he had seen in the trailer.

GORDON's 2000 "Panda Power"          GORDON's 2008 "Kung Fu Panda Power"




4

*DreamWorks' Po and Master Shifu*



14.    GORDON changed the appearance of his characters and reversed their personalities, so that the characters more closely matched DreamWorks' giant and red panda characters.  For example:

- GORDON's Kid Panda is no longer wearing a medallion or a mask but is wearing shorts and a rope belt, like Po.

- Kid is no longer stern and is now smiling.  This matches the change GORDON made in the written character description, which now says that Kid is "the more immature of the 2 pandas."

- GORDON's Red Panda now looks older, with white on his face and white circles on his ears, like DreamWorks' Master Shifu.

15.    GORDON registered these revised drawings and story ideas with the Copyright Office in May 2008, several months after he saw the *Kung Fu Panda* trailer but a month before the movie was released.

16.    While registering a work with the Copyright Office is not necessary for it to have copyright protection, it is necessary to register if the creator wants to file a copyright infringement suit.

**The 2009 Sketches**

17.    By early 2009, GORDON was in contact with the attorneys who would ultimately

represent him in his civil suit against DreamWorks, but he did not file that suit in 2009.

18. In August 2009, a longtime friend of GORDON's ("Witness 1") provided GORDON's attorneys with additional drawings of GORDON's panda characters.

19. Several of these drawings bore dates between 1990 and 1994. Unlike any of the drawings that GORDON registered with the Copyright Office before 2008, these drawings use the phrases "Kung Fu Panda Power" and "KFPP" and some show Kid Panda wearing shorts and a rope belt, like DreamWorks' Po character.



**The 2011 Lawsuit and Settlement Proposal**

20. Based in part on these sketches, GORDON filed a copyright infringement suit against DreamWorks in the U.S. District Court for the District of Massachusetts in February 2011. In the Complaint, GORDON falsely claimed that DreamWorks' "highly successful '*Kung Fu Panda*' franchise" was "based on and copied from copyrighted works authored and owned by GORDON, collectively titled 'Kung Fu Panda Power.'"

21. In fact, DreamWorks developed the concept for *Kung Fu Panda* based on the ideas and work of DreamWorks' employees, including founder Jeffrey Katzenberg. DreamWorks then developed the characters and story with the help of writers in Hollywood

whom it hired as independent contractors.

22.     In a July 1, 2011 letter that GORDON's attorneys sent to DreamWorks' counsel by e-mail, GORDON offered to settle his lawsuit in exchange for $12 million, plus a ½ percent royalty on all revenue from future sales of *Kung Fu Panda* products and services.

23.     DreamWorks rejected GORDON's settlement proposal, and the civil litigation continued for two more years. During that time, DreamWorks' attorneys were obligated to review and produce voluminous discovery material, file numerous briefs, attend a series of court hearings, and participated in at least 12 full days of depositions.

24.     As the litigation proceeded, in an effort to increase the pressure on DreamWorks to settle his fraudulent claim, GORDON, through his attorneys, provided DreamWorks' attorneys with a report in which an expert that GORDON had hired offered his opinion that GORDON was entitled to more than $150 million in damages.

25.     GORDON did not pay for his attorneys' work on the civil litigation. Instead, he had a contingency fee arrangement that would have allowed the attorneys to keep a percentage of any award that GORDON received from DreamWorks after trial or as a settlement.

26.     DreamWorks spent approximately $1 million to defend the lawsuit, and its insurance company spent approximately $2 million, for a total of approximately $3 million in legal fees.

**GORDON's Destruction of Computer Evidence**

27.     Because GORDON said that he used the computer program Photoshop to revise his Panda Power drawings, and because his Panda Power stories and character descriptions appeared to have been created on a computer, DreamWorks requested, in the civil discovery process, copies of the contents of GORDON's computers. GORDON refused, saying, through counsel, first that he did not currently have any computers, and later that the computers he did have did not contain any evidence relevant to the lawsuit.

7

28.     Still concerned that GORDON's computers contained relevant evidence, DreamWorks, on March 12, 2012, filed a motion asking the judge to compel GORDON to produce the contents of his computers.

29.     On April 10, 2012, while that motion was pending, GORDON used a commercial software program called Permanent Eraser to erase many of the files on his primary Apple iMac computer. Permanent Eraser does not come with the Apple iMac but rather is a program that GORDON installed on that computer. It erases files more completely than the standard method of putting them in the "Trash." GORDON then deleted the Permanent Eraser software itself, using the Trash function, on April 13, 2012.

30.     On April 13, 2012, GORDON also used Apple's built-in Erase function to delete additional files and file fragments on his primary computer.

31.     On April 17, 2012, the district court granted DreamWorks' motion to compel and ordered GORDON to turn over the contents of his computers, which he ultimately did. When DreamWorks' forensic examiner reviewed them, he discovered evidence of GORDON's deletions.

32.     The forensic examiner also discovered evidence that, before the deletions, there had been more than 100 file folders on GORDON's primary computer that were related to DreamWorks' *Kung Fu Panda* or GORDON's Panda Power and therefore relevant to the litigation. Although GORDON had deleted the file folders themselves, and the files within them, the forensic examiner was able to determine the file paths and names, including those listed below, which were all on the Desktop of GORDON's computer:

KFP concept

kidd face

***kidd face/** Jayme Gordon's KFPPa.,¢/***QUESTIONS

NOW I'm LATE/CRANE no HAT

NOW i'm LATE/MARLET -unused REDD fox

kung-fu-panda-3928- 2560x1600.jpg.download

**GORDON Traced Panda Power Drawings From Disney Coloring Book**

33.     After it found that GORDON had deleted relevant documents from his computers, DreamWorks discovered that GORDON had, in fact, traced significant parts of many of his Panda Power drawings from a Disney coloring book and that he had backdated some of his sketches.

34.     The coloring book, called "The Lion King's Timon & Pumba," was published by Disney in 1996.  A side-by-side comparison demonstrates the tracing:



**1996 Disney Coloring Book**          **GORDON's 2000 Registration**



**1996 Disney Coloring Book (closeup)**     **GORDON's 2000 Registration (closeup)**

**1996 Disney Coloring Book**    **GORDON's 2000 Registration**



35.    Among the GORDON sketches that Witness 1 provided to Gordon's attorneys in 2009 were drawings that GORDON copied from the Disney Coloring book or from his traced Panda Power drawings:

**1996 Coloring Book**    **2000 Panda Power Work**    **Sketch From Witness 1**

**1996 Disney Coloring Book Image**    **Sketch From Witness 1 (Dated 1993)**    **Sketch From Witness 1 (Dated 1994)**



36.     GORDON therefore drew those sketches after 1996 (when Disney published the coloring book) and backdated them to dates in the early 1990s, in an effort to further his fraud scheme.

**GORDON Lied Under Oath During His Deposition**

37.     As part of its defense of the civil suit, DreamWorks took GORDON's deposition over the course of three days.  GORDON's testimony was under oath and was recorded by a stenographer and a videographer.

38.     During the course of that deposition, GORDON lied at least four times, in an effort to further his fraud scheme.

39.     On May 15, 2012, he made the following statements, in response to questions from DreamWorks' counsel:

> Q. Well, let me rephrase the question. In creating what you call your characters –
>
> A. Mm-hm.
>
> Q. -- did you ever take elements from other people's cartoons?
>
> A. No, I wouldn't say I took elements, no.
>
> Q. So yours -- your works are all original and aren't based on any preexisting cartoons by anybody else --
>
> [Gordon's counsel]: Objection.
>
> Q. -- is that your testimony?
>
> [Gordon's counsel]: Objection, vague and compound.
>
> Q. You can answer.
>
> A. Again, I grew up drawing a lot of different cartoon characters, so how I interpret things or something down the line, but no, no directly -- I didn't directly take elements from something, no,  not that I was ever aware of.

40.     This statement was false and misleading because, as GORDON knew, he had

traced his Kid and Red panda characters from a Disney coloring book.

41.     On December 15, 2011, GORDON made the following statements, in response to questions from DreamWorks' counsel about the image below:



Q.  Mr. Gordon, we were looking before the lunch break at Exhibit 52. Do you still have that in front of you?

A.  Yes.

Q.  Okay. If you look at the document 1065 -- do you see that drawing?

A.  Yes.

Q.  Okay. This document in the upper left-hand corner has the words "K.F.P.P." on it. Underneath it has "'80 -- '92"; do you see that?

A.  Yes.

Q.  What does the "'80 -- '92" mean?

A.  I would guess I drew it in '92 and would probably consider the creation '80, and I was marking it for creat -- just a note to myself, maybe, that I considered it created in '80 at the time, but the drawing was in '92.

Q.  And you put that marking on at the same time you drew the rest of the drawing?

A.  It looks that way.

Q.  Well, my question to you is, is that what you did?

A.  It looks that way. I would assume so.

Q.  Do you know?

A.  Yes, I did. I mean, obviously, I marked it in '92.

42.   This statement was false and misleading because, as GORDON knew, he had copied the panda drawing right below that date from the 1996 Disney coloring book. He therefore did not mark "'92" on the drawing in 1992 at the same time that he drew the rest of the drawing. Rather, he backdated the drawing to further his fraud scheme.

43.   On December 14, 2011, GORDON made the following statements, in response to questions from DreamWorks' counsel:

Q.  Have the characters of your pandas changed, Kidd and Redd, since you claimed that you had created them in the early '90s?

A.  In what way?

Q.  In any way.

A.  No.

44.   This statement was false and misleading because, as GORDON knew, he had changed the "character profiles" of his characters, and reversed their personalities so that the characters more closely matched DreamWorks' *Kung Fu Panda* characters, as is shown below:

*GORDON's 2000 Registration*    *GORDON's 2008 "Kung Fu Panda Power"*




| *Red Panda*™ | REDD PANDA ™ |
|---|---|
| Fast as a bullet, eye on the ball, agile and limber, about 2 feet tall. | Fast as a bullet, eye on the ball, agile and limber, about 2 feet tall. |
| Playful and mischievous, the life of the crowd, a guardian of goodwill this panda is proud. | Serious yet fun loving, the life of the crowd, a guardian of goodwill this panda is proud. |
| Red is the more immature of the two pandas often finding himself needing to be saved by Kid. He is a prankster and sees the humor in most situations. Unlike Kid he is tired of eating Chinese take out and often enjoys more variety. | Redd™ is the more mature of the 2 pandas often finding himself playing the role of big brother to Kidd™ He is very serious about training, but also has a dry sense of humor and does find some things funny and enjoys the occasional prank. Unlike Kidd™ He is tired of eating Chinese Take-Out and often enjoys more variety. |

45.    On December 15, 2011, GORDON made the following statements, in response to questions from DreamWorks' counsel:

> Q.  Do you make a habit of discarding computers and not copying what's on the computer?
>
> A.  I'm not sure what -- I typically use a computer like a typewriter, to make something and . . .
>
> Q.  Well, do you save files on the computer?
>
> A.  Not really, no.

46.    This statement was false and misleading because, as GORDON knew, he had saved more than 100 folders on his computer, many of which were related to his Panda Power characters or DreamWorks' *Kung Fu Panda.*

**GORDON Dismissed His Suit Against DreamWorks**

47.    After DreamWorks provided GORDON's attorneys with copies of the 1996 coloring book and an analysis documenting that GORDON traced his Panda Power characters from it, GORDON and his attorneys agreed to dismiss the copyright infringement suit against DreamWorks.  He filed his dismissal on July 30, 2013, after 2 ½ years of litigation.

## COUNTS ONE - FOUR
## Wire Fraud
## (18 U.S.C. § 1343)

48.     The Grand Jury realleges and incorporates by reference the allegations in

paragraphs 1-47 of this Indictment and charges that:

On and about the dates below, in the District of Massachusetts and elsewhere, the

defendant,

### JAYME GORDON,

having devised and intending to devise a scheme to defraud DreamWorks and for obtaining

money and property from Dream Works by means of materially false and fraudulent pretenses,

representations, and promises, did knowingly transmit, and cause to be transmitted, by means of

wire communication in interstate commerce, writings, signs, signals, and pictures, for the

purpose of executing the scheme, as described below:

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | 7/1/11 | Settlement proposal, sent via e-mail, from one of GORDON's attorneys, in Boston, MA, to DreamWorks' attorneys in New York, NY and Los Angeles, CA |
| 2 | 8/30/11 | 3-page letter, sent via e-mail, from one of GORDON's attorneys in New York, NY to DreamWorks' attorneys in Boston, MA, New York, NY, and Los Angeles, CA, asking DreamWorks to produce additional documents |
| 3 | 10/6/11 | 2-page letter, sent via e-mail, from one of GORDON's attorneys in New York, NY to DreamWorks' attorneys in Boston, MA, New York, NY, and Los Angeles, CA, responding to DreamWorks' request that GORDON produce electronic evidence. |
| 4 | 1/31/12 | E-mail from one of GORDON's attorneys in New York, NY to DreamWorks' attorneys in New York and Los Angeles, CA, and to another of GORDON's attorney's in Boston, about scheduling seven depositions |

All in violation of 18 U.S.C. § 1343.

## COUNT FIVE
## Perjury
## (18 U.S.C. § 1623)

49.     The Grand Jury realleges and incorporates by reference the allegations in

paragraphs 1-47 of this Indictment and charges that:

On or about May 15, 2012, in the District of Massachusetts, the defendant,

### JAYME GORDON,

while under oath and testifying in a proceeding before and ancillary to a court of the United

States, namely in a deposition that was part of the federal lawsuit *Gordon v. DreamWorks et al.*,

11-cv-10255-JLT, knowingly made a false material declaration. Specifically, GORDON gave the

following underlined false testimony in response to questions from DreamWorks' counsel:

> Q. Well, let me rephrase the question. In creating what you call your
> characters –
>
> A. Mm-hm.
>
> Q. -- did you ever take elements from other people's cartoons?
>
> A. <u>No, I wouldn't say I took elements, no.</u>
>
> Q. So yours -- your works are all original and aren't based on any
> preexisting cartoons by anybody else --
>
>     [Gordon's counsel]: Objection.
>
> Q. -- is that your testimony?
>
>     [Gordon's counsel]: Objection, vague and compound.
>
> Q. You can answer.
>
> A. Again, I grew up drawing a lot of different cartoon characters, so how
> I interpret things or something down the line, but no, no directly -- <u>I</u>
> <u>didn't directly take elements from something, no,  not that I was ever</u>
> <u>aware of.</u>

These statements were false because, as GORDON then knew, he had traced his Kid and

Red panda characters from a Disney coloring book.

All in violation of 18 U.S.C. § 1623.

**COUNT SIX**
**Perjury**
**(18 U.S.C. § 1623)**

50.     The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1-47 of this Indictment and charges that:

On or about December 15, 2011, in the District of Massachusetts, the defendant,

JAYME GORDON,

while under oath and testifying in proceeding before and ancillary to a court of the United States, namely in a deposition that was part of the federal lawsuit *Gordon v. DreamWorks et al.*, 11-cv-10255-JLT, knowingly made a false material declaration.   Specifically, GORDON gave the following underlined false testimony in response to questions from DreamWorks' counsel regarding the image below:



Q. Mr. Gordon, we were looking before the lunch break at Exhibit 52. Do you still have that in front of you?

A. Yes.

Q. Okay. If you look at the document 1065 -- do you see that drawing?

A. Yes.

Q. Okay. This document in the upper left-hand corner has the words

"K.F.P.P." on it. Underneath it has "'80 – '92"; do you see that?

A. Yes.

Q. What does the "'80 – '92" mean?

A. I would guess I drew it in '92 and would probably consider the creation '80, and I was marking it for creat -- just a note to myself, maybe, that I considered it created in '80 at the time, but the drawing was in '92.

Q. And you put that marking on at the same time you drew the rest of the drawing?

A. It looks that way.

Q. Well, my question to you is, is that what you did?

A. It looks that way. I would assume so.

Q. Do you know?

A. <u>Yes, I did. I mean, obviously, I marked it in '92.</u>

This statement was false because, as GORDON then knew, he had copied the panda drawing right below that date from the 1996 Disney coloring book. He therefore did not mark "'92" on the drawing in 1992 at the same time that he drew the rest of the drawing. Rather, he backdated the drawing to further his fraud scheme.

All in violation of 18 U.S.C. § 1623.

## COUNT SEVEN
## Perjury
## (18 U.S.C. § 1623)

51.     The Grand Jury realleges and incorporates by reference the allegations in

paragraphs 1-47 of this Indictment and charges that:

On or about December 15, 2011, in the District of Massachusetts, the defendant,

## JAYME GORDON,

while under oath and testifying in a proceeding before and ancillary to a court of the United

States, namely in a deposition that was part of the federal lawsuit *Gordon v. DreamWorks et al.*,

11-cv-10255-JLT, knowingly made a false material declaration.   Specifically, GORDON gave

the following underlined false testimony in response to questions from DreamWorks' counsel:

> Q. Do you make a habit of discarding computers and not copying what's
>    on the computer?
>
> A. I'm not sure what -- I typically use a computer like a typewriter, to
>    make something and . . .
>
> Q. Well, do you save files on the computer?
>
> A. <u>Not really, no</u>.

This statement was false because, as GORDON then knew, he had saved more than 100

folders on his computer, many of which were related to his Panda Power characters or

DreamWorks' *Kung Fu Panda*.


All in violation of 18 U.S.C. § 1623.

A TRUE BILL

_____
Grand Jury Foreperson

_____
Adam J. Bookbinder
Amy Harman Burkart
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS            December 16, 2015

Returned into the District Court by the Grand Jurors and filed.

_____
Deputy Clerk
@ 11:36 AM
12/16/15